# IN THE COURT OF APPEALS OF IOWA

———————

No. 24-1801
Filed February 11, 2026

———————

**In re the Marriage of Steven D. Huegerich and Brenda L. Huegerich**

Upon the Petition of
**Steven D. Huegerich,**
Petitioner–Appellee/Cross-Appellant,

And Concerning
**Brenda L. Huegerich,**
Respondent–Appellant/Cross-Appellee.

———————

Appeal from the Iowa District Court for Carroll County,
The Honorable John J. Haney, Judge.

———————

**AFFIRMED AS MODIFIED ON APPEAL,
AFFIRMED ON CROSS-APPEAL**

———————

Vicki R. Copeland of Copeland Law Firm, P.L.L.C., Jefferson, attorney for
appellant/cross appellee.

Adam J. Naset of Hope Law Firm & Associates, P.C., West Des Moines,
attorney for appellee/cross appellant.

———————

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Ahlers, P.J.

1

**AHLERS, Presiding Judge.**

The district court dissolved the thirty-seven-year marriage of Steven and Brenda Huegerich by entry of a decree. The decree divided the parties' property and debts; ordered Steven to pay $2,000 per month of traditional spousal support to Brenda; and made each party responsible for the party's own attorney fees.

Brenda appeals, challenging the property-division, spousal-support, and attorney-fee provisions of the decree. Steven cross-appeals, challenging the spousal-support provision. Both parties request appellate attorney fees.

## I. Background

Steven and Brenda married in 1987.[1] Throughout the marriage, Steven was the primary breadwinner for the family, earning gross income between $125,714 and $168,324 from 2019 to 2023 from his salaried employment. Brenda also worked outside the home during the marriage, including waitressing toward the beginning of the marriage and then bookkeeping for many years thereafter. From 2014 to 2021 she consistently made roughly $40,000 per year. But she stopped working outside the home in 2021 due to her health. The parties' combined earnings allowed them to acquire substantial assets during the marriage and to travel frequently. The assets acquired include four hog facilities, which the parties rented out for additional income.

At the time of trial, Steven was sixty years old, was in good health, and had plans to retire in about seven years. Brenda was fifty-eight years old and had many health issues. She previously had two kidney transplants, and she

---

[1] The parties had one child during the marriage. That child is now an adult, and there are no child-related issues in this case.

was expected to need a third soon. Her medical conditions caused her extreme fatigue, requiring her to take two to three naps a day and severely limiting the chores she could do at home. Although she no longer worked outside the home, she continued to keep the books for the parties' hog buildings but indicated she has trouble keeping up.

## II. Issues Presented

On appeal, Brenda raises four claims: (1) the property division was inequitable because the court failed to account for certain debts attributed to her; (2) she was awarded insufficient spousal support; (3) she should have been awarded trial attorney fees; and (4) she should be awarded appellate attorney fees.

Steven resists Brenda's claims that the property division was inequitable and that she should have been awarded trial attorney fees. He also claims Brenda should not have been awarded any spousal support, and he should be awarded appellate attorney fees.

## III. Discussion

We address the issues raised in turn.

### A. Property Division

Dissolution-of-marriage actions are tried in equity, so our review is de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). While we examine the entire record and adjudicate property-division issues anew, we give weight to the district court's factual findings, especially with respect to the credibility of witnesses. *Id.* Iowa is an equitable distribution state, so our courts divide marital property equitably after considering the factors

3

listed in Iowa Code section 598.21(5) (2023). *Id.* at 678. We only disturb the district court's ruling when it fails to do equity. *Id.* at 676.

Based on the recapitulation statement included in the decree listing each asset and debt given to Steven and Brenda along with each item's corresponding value, it is clear the district court intended to give each party an equal amount of the parties' combined net worth. Neither party objects to this approach, and we have no objection either. Our law requires an equitable distribution. *Id.* at 682. And while equitable does not necessarily mean equal, we recognize that equality is the most equitable approach in most cases. *Id.* We agree with the district court and the parties that equality is the way to go here.

Brenda's challenge to the property division boils down to a claim that, in trying to equalize the parties' resulting net worth, the court inequitably failed to account for various debts it allocated to Brenda. According to Brenda, the court's failure to account for this debt artificially inflated her net worth in the recapitulation statement.

Much of the issue stems from the fact that one of the hog buildings awarded to Brenda—referred to as the Sanibel facility—was severely damaged by a tornado a few months before trial. The hog site had to be demolished and was in the process of being rebuilt with the assistance of insurance proceeds. By the time of trial, the rebuild was not done and insurance had only paid part of the cost of the demolition and rebuild—specifically, $379,529.[2] Out of that $379,529 of insurance proceeds, Brenda paid $200,000 to the contractor and held back the remaining $179,529 to ensure continued and acceptable progress. This resulted in an outstanding

---

[2] We have rounded all property-division figures to the nearest dollar.

bill to the contractor of $179,529 along with a bank account awarded to Brenda that included the $179,529 of insurance proceeds needed to pay the contractor. Brenda contends that the district court—in comparing the amount of marital net worth awarded to each party and attempting to equalize it—included the inflated bank account balance on Brenda's side of the ledger but failed to account for the corresponding outstanding debt to the contractor.[3]

Brenda also contends that the court failed to account for several debts that were made Brenda's responsibility. Specifically, she identifies these five debts totaling $13,614: (1) a bill from John Deere for $1,989; (2) a fence repair bill of $1,750; (3) a well repair bill of $5,000; (4) a homeowners insurance bill of $3,500; and (5) a manure management plan bill of $1,375.

Following our de novo review, we agree with Brenda that the district court failed to account for the outstanding debt of $179,529 owed to the contractor rebuilding the Sanibel facility and the five debts listed in the preceding paragraph totaling $13,614. Since the district court failed to properly account for this $193,143 of debt owed by Brenda, Steven received approximately $193,143 more of the marital net worth than Brenda. To resolve this imbalance, we modify the district court's decree and order Steven to pay an equalization payment to Brenda of $96,572. Steven shall make such payment in full within thirty days of issuance of procedendo. If Steven fails to pay in full by that deadline, besides potential contempt of court

---

[3] In her initial brief, Brenda also raised an issue over a purported failure to award her the remaining insurance proceeds anticipated to complete the rebuild of the Sanibel facility and compensate for lost rent during the rebuild. Brenda abandoned that issue in her reply brief after acknowledging that the district court had, in fact, awarded her "any of the remaining insurance proceeds from the tornado damage associated with this property."

sanctions, interest shall accrue on the outstanding balance at the statutory rate starting on the thirty-first day following procedendo.

## B. Spousal Support

The district court ordered Steven to pay Brenda $2,000 per month of traditional spousal support until Brenda's remarriage or the death of either party. Both parties challenge the spousal support ordered. Brenda contends it should be raised to $3,500 per month. Steven contends he should not be required to pay spousal support at all.

Our review of spousal support awards is de novo, but "we accord the trial court considerable latitude." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (cleaned up). Therefore, we disturb the district court's order for spousal support "only when there has been a failure to do equity." *Id.* (cleaned up).

Traditional spousal support is intended to "provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *Id.* at 408 (citation omitted). However, spousal support should not be calculated to maintain one party's standard of living at the expense of the other. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). In other words, the payor's ability to maintain the same standard of living should be considered just as much as the payee's ability to do so. *In re Marriage of Stenzel*, 908 N.W.2d 524, 534 (Iowa Ct. App. 2018).

To determine the appropriateness and duration of spousal support, the court considers the following factors:

> a. The length of the marriage.
>
> b. The age and physical and emotional health of the parties.

6

c. The distribution of property made pursuant to section 598.21.

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1). Precedent is of little value in making this determination because the court must consider the whole record and the circumstances of each case. *Gust*, 858 N.W.2d at 408. In marriages of long duration, we look primarily at the need of the party requesting support and the ability of the other party to pay. *Id.* at 411. Our assessment of need is based on the requesting party's ability to become self-sufficient at a standard of living comparable to that enjoyed during the marriage. *Id.* This analysis is based on earning capacity rather than actual income. *Id.*

Although there are four types of spousal support, only the amount of support is at issue here, not the type. *See In re Marriage of Sokol*, 985 N.W.2d

177, 185 (Iowa 2023) (recognizing the four types of spousal support, namely traditional, reimbursement, rehabilitative, and transitional). As noted, the court awarded Brenda $2,000 per month in traditional support. She argues she is entitled to $3,500, and Steven argues she has no right to support.

Brenda claims her need is great because she will have to pay more for insurance and medication due to her many medical issues and because she cannot work. She also claims Steven can pay the amount she requests because of his high salary, income from his hog facilities, and the value of his work benefits—including use of a company vehicle, health insurance, and retirement contributions. Conversely, Steven argues Brenda's needs are met by her ability to work from home; the property division that provides her with substantial assets, including two hog facilities that should generate $5,500 to $6,000 per month of income; the equity in the homestead the court awarded her; and the government benefits she should be eligible to receive if she is truly disabled, including Social Security disability benefits. Further, Steven claims his ability to pay is dependent on his job, which he will not have when he retires in approximately seven years.

We start with Steven's cross-appeal seeking to deny Brenda's claim for spousal support in its entirety. Although Steven claims Brenda can still work, the pair have been living separately since July 2023, and Brenda's condition has progressively worsened due to stress. The evidence suggests her ability to work is minimal to nonexistent. We also decline to consider Steven's intent to retire in seven years as a significant factor at this time because Brenda's health and Steven's plans may change within that time. Our supreme court has directed that any change in circumstances resulting from Steven's retirement should be addressed in a later modification action. *See Gust*, 858 N.W.2d at 418 ("The most consistent approach with the statutory scheme is

that unless all of the factors in Iowa Code section 598.21C(1) can be presently assessed, future retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order."). Given these considerations, the disparity in incomes, the length of the marriage, and the other statutory factors, Brenda is entitled to traditional spousal support in some amount, so we affirm on Steven's cross-appeal.

Turning to Brenda's challenge to the spousal support order, we are not convinced by Brenda's contention that the spousal support amount fails to do equity. By failing to apply for various benefits for which she may be eligible, she has not done all she can to try to defray any financial crunch stemming from her medical conditions. Also, we are not persuaded by Brenda's claim that the hog facilities awarded to her operate at a loss while those awarded to Steven operate at a substantial profit. The income from the hog facilities is unclear on this record. We are mindful that Brenda did the books for the parties' hog facilities for years and testified that the hog facilities awarded to her run at a loss due to a variety of factors. But we note that each party received the hog facilities they requested, and we are skeptical that Brenda, a bookkeeper by trade, would willingly agree to take the two facilities she claims run at a loss while agreeing that Steven could have two facilities that operate at a profit. That said, we are also skeptical of the income figures Steven attributes to the facilities awarded to Brenda, as they are likely inflated. As is often the case in such circumstances, the truth is probably somewhere in the middle of the positions taken by the parties. The district court was in a better position than us to size up the parties' competing claims and arrived at a figure of $2,000 per month of traditional spousal support. Following our de novo review of this record, we cannot say that the court's determination failed to do equity. As such, we decline to disturb it. *See id*. at

406 (holding that the appellate court should only disturb a spousal-support order "when there has been a failure to do equity").

### C.     Trial Attorney Fees

Brenda sought an award of trial attorney fees, which the district court declined to award. Brenda challenges this denial on appeal.

In dissolution cases we review a claim for trial attorney fees for abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). Here, the district court determined each party should pay their own attorney fees based on its property division and spousal-support award. Brenda argues Steven should be ordered to pay her trial attorney fees because he has the ability to do so and she does not. Based on our review of the record, we cannot say the district court's refusal to award Brenda trial attorney fees was an abuse of discretion, so we affirm on this issue.

### D.     Appellate Attorney Fees

Each party makes a claim for appellate attorney fees. We have discretion to award appellate attorney fees in dissolution actions. *Id.* To make this determination, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Here, Brenda has the need for an award of appellate attorney fees, Steven has the ability to pay based on his income, and Brenda was partially successful on appeal while Steven was not. Based on these findings, we reject Steven's claim for appellate attorney fees and partially grant Brenda's. Brenda seeks $12,866 in appellate attorney fees.

Because she was only partially successful on her appeal, we award her fifty percent of the requested amount. *See In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021) (awarding partial appellate attorney fees when the requesting party was partially successful in his claim). We order Steven to pay $6,433 of Brenda's appellate attorney fees.

## IV.    Conclusion

We modify the district court's decree to require Steven to pay a property-division equalization payment to Brenda in the amount of $96,572 on the terms and conditions stated in this opinion. In all other respects, we affirm the district court's decree. Finally, we deny Steven's claim for appellate attorney fees and order him to pay Brenda's appellate attorney fees in the amount of $6,433. Costs on appeal are assessed to Steven.

**AFFIRMED AS MODIFIED ON APPEAL, AFFIRMED ON CROSS-APPEAL.**